# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

JUAN MANUEL TORRES,

                      Defendant.

Case No.:  3:17-CR-3556-DMS

**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(ii)**

      Pending before the Court is Defendant Juan Manuel Torres' Motion to Reduce Sentence Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  The United States filed a response in opposition, and Defendant filed a reply.  For the following reasons, the Court grants Defendant's motion.

# I.
# BACKGROUND

      On March 22, 2018, Defendant pled guilty to possessing one kilogram or more of heroin (specifically 8.6 kilograms) with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1).  He was subject to a ten-year mandatory minimum sentence.  The government moved for a 24-month departure under United States Sentencing Guideline (U.S.S.G.) § 5K1.1 (substantial assistance) and for relief from the mandatory minimum under 18 U.S.C. § 3553(e).  It recommended a sentence of 96 months imprisonment.  On October 10, 2018,

the Court sentenced Defendant to 84 months imprisonment to be followed by 5 years of supervised release.  (ECF No. 46.)  On May 8, 2023, Defendant filed a motion for compassionate release, (ECF No. 68), and requested the Court to reduce his sentence to time served or approximately 56 months.  (*Id.* at 6.)

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by Rule 35 of the Federal Rules of Criminal Procedure or by statute.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  The First Step Act ("FSA") is such a statute.  *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018).  Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to move a district court for compassionate release after exhausting remedies with the Bureau of Prison (BOP).

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a sentence reduction, the reduction is consistent with applicable policy statements issued by the United States Sentencing Commission, and the reduction complies with the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).  As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction.  *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

District courts have discretion to determine whether there are "extraordinary and compelling reasons" that warrant a sentence reduction because the Sentencing Commission's policy statement, which is set out in United States Sentencing Guideline (U.S.S.G.) § 1B1.13, is not binding on district courts.  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  Although not binding, § 1B1.13 may inform a district court's decision as to whether certain conditions are extraordinary and compelling.  *See id.*

"[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13, cmt. 3.  In addition, in assessing extraordinary and compelling

reasons, the Court may consider non-retroactive changes in sentencing law "in combination with other factors particular to the individual defendant." *United States v. Chen*, 48 F.4th 1092, 1093 (9th Cir. 2022).

A.   Exhaustion of Administrative Rights

A defendant may seek compassionate relief from a court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). On July 30, 2020, Defendant filed a request for compassionate release with the BOP based on the risk posed to him by COVID-19. (*See* ECF No. 68, Ex. H.)  The BOP denied the request, (ECF No. 68, Ex. I), and Defendant filed an additional request for the same reasons on September 25, 2020, which also was denied. (*Id.*) On January 21, 2023, after the Court appointed counsel to represent Defendant, counsel supplemented Defendant's request based on the First Step Act ("FSA") and *United States v. Lopez*, 998 F.3d 431 (2021). (*See* ECF No. 68, Ex. J.)  The BOP denied this request on February 22, 2023. (*See* ECF No. 68, Ex. K.)  There is no dispute Defendant has exhausted his administrative remedies. Accordingly, the Court proceeds to the merits of Defendant's motion.

B. Extraordinary and Compelling Reasons

Mr. Torres contends there are three extraordinary and compelling reasons which merit a sentence reduction: sentencing disparity, rehabilitation, and the effects of COVID-19.  Each of these reasons is addressed in turn.

1. *Sentencing Disparity*

Sentencing disparities resulting from non-retroactive FSA amendments may form part of the Court's extraordinary and compelling reason analysis. *See Chen*, 48 F.4th at 1098-99.  "[A] sentencing disparity created by changes to the law on sentencing that gives rise to an injustice of facing a term of incarceration longer than what Congress currently deems warranted for the crimes at issue constitutes an extraordinary and compelling reason for reducing a sentence under § 3582(c)(1)(A)." *United States v. Blanco*, No. 93-CR-

3

20042-2, 2020 WL 7350414, at *6 (N.D. Cal. Dec. 14, 2020).  Defendant argues there is a "disparity between his sentence and the sentence he would have received today, because of *Lopez* and other legal developments."  (Def. Mot. at 13.)

The FSA was enacted two months after Defendant was sentenced.  Pertinent here, the FSA expanded 18 U.S.C. § 3553(f)'s safety valve criteria and permitted district courts to deviate from mandatory minimum sentences in circumstances not previously authorized. Here, at the time of sentencing, the parties agreed Defendant was not safety valve eligible as he had five criminal history points and was in Criminal History Category (CHC) III. Defendant was therefore subject to a statutorily prescribed ten-year mandatory minimum sentence.  The parties further agreed that if Defendant was safety valve eligible, he would have fallen with a 37-46 month guideline range, and he would have been free to argue for variances under § 3553(a) or further departures under the sentencing guidelines.  (Def. Mot. at 1, Ex. A (Sentencing Transcript).)

Defendant has now served approximately 56 months of his sentence.  Post- FSA and *Lopez*, it is undisputed that if Defendant were sentenced today he would qualify for safety valve relief, the ten-year mandatory minimum would not apply, and the Court would be free to consider all available departures under the Sentencing Guidelines as well as variances under § 3553(a).  Thus, "to determine whether there is a sentencing disparity here, the Court compares Defendant to similarly situated defendants sentenced after the [FSA] and *Lopez*."  *Ortiz*, 2023 WL 2229262, at *5.  After enactment of the FSA, and in light of *Lopez*, two levels would have been subtracted for safety valve and the adjusted guideline range would have decreased from 120 months (the statutory minimum under the Guidelines) to 37-46 months, calculated as follows: base offense level 32 recast to level 30 for minor role, minus two for minor role, minus three for acceptance of responsibility, and minus four for "fast-track" disposition.  The adjusted offense level would be 19, and with a criminal history category of III, Defendant's guideline range would be 37-46 months.

The government invites the Court to disregard sentencing disparity as an extraordinary and compelling reason.  (Gov't Oppo. at 5.)  However, *Chen* makes clear

that non-retroactive changes in sentencing law may be taken into consideration in combination with other factors.  48 F.4th at 1093.  The government next contends that a pending revision to the Sentencing Guidelines, U.S.S.G. § 1B1.13(c), states that "a change in the law (including an amendment to the Guidelines manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."  But as the government acknowledges, this revision is pending and not binding.

If Defendant were sentenced today, the sentencing landscape would be markedly different, as set forth above.  The parties agreed at the original sentencing in 2018 that, with the ten-year mandatory minimum at play, the Court could sentence below the ten-year statutorily prescribed minimum only if it found the criteria of § 5K1.1 were met, and the government moved for relief under § 3553(e).  The government made both of those motions.  However, the parties further agreed that the Court could depart below the ten-year statutory minimum only under § 5K1.1, and could not resort to other Guideline departures or variances under § 3553(a).  *See United States v. Auld*, 321 F.3d 861, 867 (9th Cir. 2003) (stating "district court may not … consider factors unrelated to the defendant's assistance.") (citations omitted).  In the context of that straight-jacket, the Court departed an additional 12 months under § 5K1.1 and sentenced Defendant to 84 months.

The Court may now reevaluate Defendant's sentencing in light of *Chen* and *Lopez*, and does so.  The Court finds that the change in sentencing landscape and disparity in potential sentences are extraordinary and compelling reasons under the Sentencing Guidelines.

### 2. Rehabilitation

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Courts may, however, consider rehabilitation along with other factors.  *Chen*, 48 F.4th at 1098.  Defendant argues his significant rehabilitation, combined with sentencing disparity, warrant a sentence reduction.  (Def. Mot. at 13.)  The Court agrees.

At sentencing, the Court recognized Defendant's criminal conduct stems from a longstanding addiction to drugs, and that a productive path forward depended on sobriety. (*Id.* at 24 (citing Ex, A., Sentencing Transcript at 12.)  Since, Defendant has completed a drug abuse course, FCC Lompoc's Non-Residential Drug Abuse Program, and more than 641 hours of programming through the Residential Drug Abuse Program.  (Def. Mot. at 25, n.42.)  Defendant believes these tools will allow him to maintain sobriety post-release. (*Id.* at 24-25.)

In addition, while Defendant received a few minor reprimands in 2019, he has been discipline-free for the last three years.  (*Id.* at 8, n.23.)  Finally, Defendant's brother provided a declaration stating Defendant can work as a foreman at Southwest Carpenters Union upon release from custody.  (*Id.* at Ex. N.)  The government does not specifically address Defendant's rehabilitative progress, and instead notes that Defendant's current placement in a halfway house is a necessary and important step for successful reintegration into society.  (Gov't Oppo. at 7) (citing *United States v. Cowan*, No. 17-cr-660-MMA, 2021 1698628, at *3 (Apr. 29, 2021) (noting importance of defendant serving part of custodial sentence in halfway house.))  The Court agrees that an intermediary step, such as a halfway house, is helpful to individuals like Defendant with substance abuse issues.  But unlike the defendant in *Cowan*, Defendant does not have a criminal history including violence or weapons and he has made significant strides toward rehabilitation.

### 3. COVID-19

Defendant also argues the "unusually harsh conditions of confinement he has endured during the COVID-19 global pandemic" constitute an extraordinary and compelling reason warranting sentence reduction.  (Def. Mot. at 13.)  Defendant asserts he is "susceptible to the more extreme symptoms of COVID-19 due to his history of asthma and chronic smoking[,]" (*id.* at 26), and he reports continually experiencing "shortness of breath, even finding himself unable to breathe correctly after basic physical activity such as walking."  (*Id.* at 27.)  Defendant's incarceration began prior to the COVID-19 pandemic, and his incarceration has spanned the entirety of the pandemic, which is largely

over.  With vaccines and other medications and measures in place to combat the virus, the Court finds Defendant's potential health risks do not amount to extraordinary and compelling reasons.

C. § 3553 Factors

In determining whether to grant a sentence reduction, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  When this Court originally sentenced Defendant, it did not consider the § 3553(a) factors because, as discussed, Defendant was not safety valve eligible and sentencing departures were limited to § 5K1.1.  That is no longer the case.

Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  *Id.* § 3553(a)(2)(A)–(D).  The Court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.* §§ 3553(a)(1), (6).  Courts also must take into consideration post-sentencing rehabilitation.  *Pepper v. United States*, 562 U.S. 476, 490 (2011); *Lizarraras-Chacon*, 14 F.4th 961, 967 (9th Cir. 2021).

On balance, the § 3553(a) factors weigh in favor of a sentence reduction.  The nature and circumstances of the case are unremarkable.  Defendant was a courier transporting 8.6 kilograms of heroin and the parties jointly recommended a minor role adjustment.  He was stopped at a highway checkpoint, and after the drugs were discovered, he was arrested without incident.  He has a minor criminal history, including three dated misdemeanors: one for driving without a license, and two for DUI—the most recent of which is eight years old.  He has no crimes involving weapons or violence, and he does not present a danger to

the safety of others or the community.  While incarcerated, Defendant was classified as a minimum security risk, with a low risk of recidivism.  (*Id.*)  He has solid work skills, family support, and is characterized as a good father and person who suffers from drug addiction.  Finally, Defendant demonstrated genuine remorse for the crime he committed, cooperated fully with government following his guilty plea, and has made significant progress toward rehabilitation.

The Court believes the approximate 56 months Defendant has spent in custody is sufficient to meet the § 3553 (a) factors above.  Defendant also will be provided additional structure and guidance while on supervised release.

### III.

### CONCLUSION AND ORDER

For these reasons, Defendant's motion for sentence reduction is granted.  Defendant is sentenced to time served as of the date of this Order.  Defendant is subject to the term of supervised release originally imposed, and he will contact United States Probation within 72 hours of his release.

**IT IS SO ORDERED.**

Dated:  June 12, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

8